*475
 
 Opinion
 

 FRANSON, J.
 

 Statement of the Case and Facts
 

 On February 9, 1977, Attorney William A. Martin (petitioner herein) appeared before the Honorable Norman S. Reid as counsel for defendant Edward S. Santos in the paternity action entitled Sally Michelle Sabala v. Edward S. Santos, Stanislaus County Superior Court No. 138150. On that date, in the immediate presence of the court and during court trial in the above action, petitioner made the following representations of fact to the court:
 
 [1]
 

 “a. That Robert Cardenaz, a witness subpoened by the defense, had not appeared for trial;
 

 “b. That Robert Cardenaz was a material and necessary witness for the defense;
 

 “c. That he, William A. Martin, had been informed by the defendant that the witness had said he had to leave town because of a family emergency, but had not said where he was going or when he would be back; and
 

 “d. That he, William A. Martin, had not talked to the witness and had no information, knowledge or belief concerning the whereabouts of the witness or when he would return except as stated to him by defendant.”
 

 The above representations resulted in two short continuances from February 9, 1977, until 1 p.m., Februaiy 10, 1977, and again from February 10, 1977, until 1 p.m., February 11, 1977. The representations further resulted in the issuance of a bench warrant for Cardenaz who had previously been subpoenaed by the petitioner.
 

 On February 11, 1977, Cardenaz was in court after having been arrested.
 
 [2]
 
 At that time the court addressed itself to the matter of the
 
 *476
 
 apparent contempt of Cardenaz in failing to respond to the subpoena served upon him by petitioner. Cardenaz testified in his own behalf regarding his failure to attend the February 9th court hearing. He stated that he had advised petitioner on February 7th that he would be unable to come to court on February 9th because he had to go to Mexico due to a family emergency. Cardenaz testified that petitioner told him, “Well, after we give the subpoena you can go, and we tell the court you have to leave, an emergency.”
 

 Geoffrey Hutcheson, an attorney employed by petitioner’s office, testified on behalf of the petitioner. He testified that petitioner was not present when he and Cardenaz had a conversation about the latter’s possible need to travel to Mexico due to.a family emergency.
 

 Thereafter, petitioner testified that on the day before the trial, he did see Cardenaz in the lobby of petitioner’s offices. Petitioner assertedly introduced Cardenaz to his associate, Geoffrey Hutcheson, telling Cardenaz that Hutcheson would handle the Santos case in which Cardenaz was to testify. Petitioner admitted that he told Cardenaz that he wanted him in court the next day. Cardenaz responded that it would be difficult to get there due to some emergency, but petitioner denied that Cardenaz mentioned going to Mexico or any other place. Petitioner testified he had no further conversation with Cardenaz.
 

 The above testimony prompted Judge Reid to rebuke petitioner, claiming that this was the first occasion in which petitioner admitted talking to Cardenaz about an emergency which might prohibit him from being in court. As to Cardenaz, the trial judge found him not to be in contempt and recalled the bench warrant.
 

 At the conclusion of the principal action, Sabala v. Santos, Judge Reid made the following findings: “... I am going to find as a fact in this particular instance that contrary to the representations that were made Mr. William Martin knew that Mr. Cardenaz anticipated going to Mexico and that that matter had been discussed and that he had advised Mr. Cardenaz not to worry. I am going to find under the circumstances that the representations that were made to the Court were false. They were made with the intent to deceive, to disrupt the orderly proceedings of the Court. I am going to find that this was a contempt committed in the immediate presence of the Court. It is a direct contempt. And for that contempt I am going to order that Mr. William Martin be imprisoned in the county jail for 48 hours. A stay of execution will be had until
 
 *477
 
 February 15th at 9 a.m.” Petitioner requested and was granted the right to be heard. He objected, claiming that if there was a contempt, it was an indirect contempt requiring notice and a hearing in another court.
 

 Formal findings and a judgment of contempt against petitioner were filed on February 14, 1977. Thereafter, petitioner filed motions for reconsideration, purge, rehearing, and notification of petition, and to set aside the findings of contempt on the basis of lack of jurisdiction. In his motions, petitioner stated that he did not intend by his representations to the court on February 9th to deceive or mislead the court in any way; that his representations were inadvertently and mistakenly made. Petitioner apologized to the court for any act, conduct or representations on his part which may have caused a delay in the proceedings or interfered with the orderly process of the court.
 

 On March 3, 1977, the judgment of contempt was set aside and a rehearing was granted and set for March 10th.
 
 [3]
 
 Execution of judgment was stayed pending the results of the rehearing and a possible appeal.
 

 On March 9, 1977, petitioner filed a motion in opposition to Judge Reid sitting as trial judge in the contempt action. The motion was grounded on the assertion that Judge Reid had become so embroiled in the controversy with petitioner and was so prejudiced against petitioner that he could not impartially try the contempt charge. Petitioner requested that the matter be heard by another judge.
 

 On March 10, 1977, Judge Reid denied the motions, and the rehearing was held before Judge Reid. The court received into evidence without objection a number of declarations submitted on behalf of petitioner and the transcript of the February 11, 1977, hearing which included testimony of petitioner and Cardenaz.
 

 At the rehearing, petitioner claimed he had only a brief conversation with Cardenaz on the day prior to trial before introducing Cardenaz to Mr. Hutcheson who was to try the case in which Cardenaz was to testify. Petitioner also testified that Cardenaz did indicate to him that he would rather be somewhere else than testify in a paternity action. However, petitioner denied that Cardenaz said anything about having a family emergency which would prohibit him from being in court; nor did
 
 *478
 
 Cardenaz say anything to petitioner about possibly having to. go some place rather than appear in court.
 

 Two of petitioner’s clients who were present in the lobby of his offices at the time of the alleged statement by Cardenaz to petitioner corroborated petitioner’s testimony that petitioner and Cardenaz had only a very brief conversation before petitioner introduced Cardenaz to Hutcheson.
 

 Geoffrey Hutcheson and Grady Taylor, a client of Hutcheson, were also present in the lobby at the time of the brief conversation between petitioner and Cardenaz. Taylor testified that Cardenaz told petitioner that he couldn’t be or didn’t want to be at the trial the next day. Petitioner assertedly replied that Cardenaz had to attend. Taylor could recall no mention of the word “Mexico” or of a planned trip to Mexico in their conversation. Hutcheson testified that he also did not hear Cardenaz say anything to petitioner about having to go to Mexico. Cardenaz’ comment about having to go to Mexico was subsequently directed to Hutcheson out of petitioner’s presence. And Hutcheson testified he didn’t relay this comment by Cardenaz to petitioner until Friday, February 11th.
 

 At the conclusion of testimony, Judge Reid made the same findings as were filed on February 14, 1977. Specifically, the court found the petitioner had represented to the court on February 9th and 10th that a material and necessary witness for the defense in the paternity action, Robert Cardenaz, had not appeared for trial despite being subpoenaed; that he, petitioner, had been informed by the defendant that the witness had said he had to leave town because of a family emergency, but had not said where he was going; and that he, petitioner, had not talked to the witness and had no information, knowledge or belief concerning the whereabouts of the witness except as stated to him by defendant.
 

 Furthermore, Judge Reid found that the representations made by petitioner were false based on the following: that on February 8, 1977, petitioner had spoken with the absent witness and had been told that the witness was planning to leave for Mexico the following day; that petitioner told the witness that he would be subpoenaed, but if he had to leave for Mexico, he needn’t worry because he (petitioner) would advise the court why he had to leave; that when petitioner made the representations to the court, he fully believed that the witness was on his way to, or was already in Mexico, and would be unavailable to testify.
 

 
 *479
 
 Finally, Judge Reid found that petitioner’s false representations were deliberately made for the purpose of deceiving the court, disrupting the orderly and expeditious trial of the paternity action, and constituted a clear breach of an attorney’s duty to the court amounting to a direct contempt of court.
 

 Petitioner was sentenced to imprisonment in the county jail for 48 consecutive hours, execution of sentence to be stayed until 5 p.m. on March 18, 1977.
 

 On March 17, 1977, petitioner sought a writ of habeas corpus in this court. On that date, we stayed execution of sentence pending further order of this court.
 

 Discussion
 

 Preliminarily, we observe that any issues raised as to the initial contempt proceeding and judgment of February 11th were rendered moot by Judge Reid’s action of March 3d in setting aside the contempt judgment and granting a rehearing. By granting the rehearing, Judge Reid effectively gave petitioner due notice of the charges against him (petitioner had been served with a copy of the formal findings and judgment of contempt arising out of his representations of Feb. 9), the right to retain counsel, to present witnesses on his behalf and to cross-examine witnesses against him. Thus, an entirely new proceeding on the contempt charges was scheduled for March 10th, some 30 days after petitioner’s alleged contemptuous behavior.
 
 [4]
 

 
 *480
 
 Because of the penalties that may be imposed, a civil contempt proceeding is criminal in nature.
 
 (Raiden
 
 v.
 
 Superior Court
 
 (1949) 34 Cal.2d 83, 86 [206 P.2d 777].) Thus, the constitutional rights of the accused must be observed. For example, he is entitled to a presumption of innocence
 
 {Bennett
 
 v.
 
 Superior Court
 
 (1946) 73 Cal.App.2d 203, 224 [166 P.2d 318]). He cannot be compelled to testify
 
 {Ex parte Gould
 
 (1893) 99 Cal. 360 [33 P. 1112]). A mere preponderance of evidence is insufficient; the contempt must be proved beyond a reasonable doubt
 
 (Bennett
 
 v.
 
 Superior Court, supra,
 
 73 Cal.App.2d at p. 210). Finally, presumptions or intendments may not be indulged in to support the contempt order; thus, the findings and judgment are strictly construed in petitioner’s favor.
 
 (Raiden
 
 v.
 
 Superior Court, supra,
 
 34 Cal.2d at p. 86.)
 

 In addition to these fundamental evidentiary and procedural rights arising from the “criminal” nature of the proceedings, absent an absolute and immediate need of the judge to maintain control over his courtroom to prevent an actual obstruction of justice, thereby justifying a “summary” adjudication of the contempt charge, due process requires that someone other than the trial judge try the contempt charge if the trial judge has become so “personally embroiled” with the lawyer at the trial as to make the judge unfit to sit in judgment on the contempt charge.
 
 (In re Buckley, supra,
 
 10 Cal.3d at p. 256;
 
 Mayberry
 
 v.
 
 Pennsylvania, supra,
 
 400 U.S. 455, 465 [27 L.Ed.2d 532, 540, 91 S.Ct. 499].)
 

 Moreover, in
 
 Taylor
 
 v.
 
 Hayes
 
 (1974) 418 U.S. 488 [41 L.Ed.2d 897, 94 S.Ct. 2697], it is held that “contemptuous conduct, though short of personal attack, may still provoke a trial judge and so embroil him in controversy that he cannot ‘hold the balance nice, clear and true between the state and the accused . ..’
 
 (Tumey
 
 v.
 
 Ohio,
 
 273 U.S. 510, 532 [47 S.Ct. 437] . .. .” (418 U.S. at p. 501 [41 L.Ed.2d at p. 909, 94 S.Ct. 2697].) In
 
 Taylor, supra,
 
 the court stated: “In making this ultimate judgment, the inquiry must be not only whether there was actual bias on respondent’s part, but also whether there was ‘such a likelihood of bias or
 
 an appearance of bias
 
 that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused.’ [Citation.]
 
 ‘Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh
 
 
 *481
 

 the scales of justice equally between contending parties, ’ but due process of law requires no less.
 
 [Citation.]” (Italics added.
 
 Taylor
 
 v.
 
 Hayes, supra,
 
 418 U.S. at p. 501 [41 L.Ed.2d at p. 909] quoting from
 
 Ungar
 
 v.
 
 Sarafite
 
 (1964) 376 U.S. 575, 588 [11 L.Ed.2d 921, 930, 84 S.Ct. 841] and
 
 In re Murchison
 
 (1955) 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623].)
 

 In
 
 Hawk
 
 v.
 
 Superior Court
 
 (1974) 42 Cal.App.3d 108, 132 [116 Cal.Rptr. 713], it is noted that in
 
 Taylor
 
 v.
 
 Hayes, supra,
 
 “it was not petitioner’s conduct, considered alone, that required recusal; rather, the critical factor was the character of [the trial court’s] response to misbehavior [of the attorney] during the course of the trial.” (Italics deleted.)
 

 Applying these principles to the record before us, it is clear that Judge Reid should have recused himself from trying the contempt charge against petitioner at the rehearing.
 

 On March 3, 1977, during the hearing on petitioner’s request for a rehearing, Judge Reid made the following statement:
 

 “I am concerned about what happened in my courtroom and I want to be perfectly blunt right at the very beginning, to tell you, that even if I were to find Mr. Martin were not—had not been advised by Mr. Cardenas [s/c] that he was going to Mexico, that I am wholly of the opinion from what Mr. Martin has admitted and what I have heard in court that he deceived me and did so deliberately ....
 

 “I feel I have been deceived by Mr. Martin and that it was done deliberately. I will say as things now stand,
 
 even after reading the affidavits that have been filed,
 
 I will go further and say that I also believe that my original impression was correct as things now stand. I am prepared to receive additional evidence and to be persuaded otherwise, but I don’t want to take up unnecessary time and delay proceedings or bring in possibly unnecessary witnesses . .. .” (Italics added.) At the very least, these comments on their face suggest a bias and a presumption of guilt against petitioner before the rehearing commenced. Thus, the comments conflict with the presumption of innocence to which petitioner was entitled.
 
 (Bennett
 
 v.
 
 Superior Court, supra,
 
 73 Cal.App.2d at p. 224.)
 

 We recognize that Judge Reid indicated that he was prepared to receive additional evidence and to be persuaded that petitioner had not deliberately misled the court by his representations of February 9. We
 
 *482
 
 accord full respect to Judge Reid’s intention in this regard. However, we are persuaded by the language in
 
 Taylor
 
 v.
 
 Hayes, supra,
 
 to the effect that when a contempt hearing is continued to a later date, any appearance of bias should disqualify a judge even though the judge in fact has no actual bias against the lawyer. In such a situation the integrity of the judicial process requires that a new judge wholly unconnected with the alleged contemptuous behavior of the lawyer should sit on the case. Due process of law requires no less.
 

 That petitioner was denied due process of law on the rehearing is further buttressed by the fact that Judge Reid in effect became an adversary against petitioner at the rehearing. Because.of the absence of a reporter at the time of the original hearing, Judge Reid claimed that he was best suited to preside at the contempt hearing since petitioner’s representations were directed to him personally. He stated: “. .. I think that these were facts which transpired before me in the course of conduct of a judicial proceeding which I have expressed as constituting a contempt. Since they did occur in my presence and in my immediate view, I think perhaps I am the best judge of the facts as to what actually transpired, under the laws that exist, and better qualified to determine what the facts were than some other judge. ...”
 

 Judge Reid missed the point. His observation that he was the best qualified judge to determine the facts as to what had transpired indicates the very kind of subjective involvement which required a recusal. Judge Reid easily could have testified before another judge concerning his recollection of petitioner’s representations about the missing witness. It is self-evident that the other judge would have been better able to objectively evaluate the truthfulness of petitioner’s representations in the light of the testimony of the other witnesses.
 

 Moreover, Judge Reid did not limit himself to the role of a trier of fact. Because of his position, he was forced to cross-examine petitioner and his witnesses much like a prosecuting attorney. If a hearing had been before another judge, the county counsel representing Judge Reid would have assumed this task.
 

 In addition, in expressing his own recollection as to what transpired at the time of the alleged contempt on February 9 and 10, Judge Reid, in effect, became a witness against petitioner in violation of the spirit of California Evidence Code section 703, subdivision (b) which prohibits a
 
 *483
 
 judge from testifying against objection in any action over which he presides.
 

 For the reasons stated, we conclude that Judge Reid should have referred, the adjudication of the contempt to another judge.
 

 The order adjudging petitioner in contempt of court is annulled. The cause is remanded for further proceedings before another judge in accordance with the applicable rules of law.
 

 Brown (G. A.), P. J., and Hopper, J., concurred.
 

 Respondents’ petition for a hearing by the Supreme Court was denied August 25, 1977.
 

 [1]
 

 There was no stenographic record made in that action. As discussed herein, the asserted representations of petitioner are based on the recollections of Judge Reid and incorporated into his findings re contempt.
 

 [2]
 

 Petitioner was fined $50 for being a few minutes late bringing in the witness on this occasion.
 

 [3]
 

 Judge Reid stated that he was giving petitioner a rehearing because he was persuaded that the contempt was of a “hybrid” type requiring notice of the specific charges constituting the alleged contempt and the opportunity to be heard thereon.
 

 [4]
 

 It may be argued that when Judge Reid granted the rehearing, he impliedly recognized that he was dealing with an indirect contempt situation in that it was necessary to obtain the testimony of witnesses who were not before him on February 9th in order to establish the truth or falsity of petitioner’s representations on that date. In indirect contempt, a more elaborate procedure must be followed in order to notify the person so charged and to allow him an opportunity to be heard. (See Code Civ. Proc., §§ 1211-1217;
 
 Arthur
 
 v.
 
 Superior Court
 
 (1965) 62 Cal.2d 404, 407-408 [42 Cal.Rptr. 441, 398 P.2d 777].) However, it appears that we are faced in the present case with a “hybrid” contempt where elements of both direct and indirect contempt are present, i.e., the petitioner’s representations occurred in the immediate presence of the court, but their falsity can only be established by events which transpired outside of the court’s presence. (See
 
 Arthur
 
 v.
 
 Superior Court, supra,
 
 62 Cal.2d at p. 408;
 
 Chula
 
 v.
 
 Superior Court
 
 (1962) 57 Cal.2d 199 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421];
 
 Lyons
 
 v.
 
 Superior Court
 
 (1955) 43 Cal.2d 755 [278 P.2d 681].) In the hybrid situation, our Supreme Court has consistently held that the statutory procedure for direct contempt is suitable as long as an appropriate hearing is held on the question of excuse. Stated otherwise, in the “hybrid” situation the procedure for indirect contempt is not required to protect the rights of the
 
 *480
 
 accused.
 
 (Chula
 
 v.
 
 Superior Court, supra,
 
 57 Cal.2d at p. 207 (J. Gibson conc.):
 
 Arthur
 
 v.
 
 Superior Court, supra,
 
 62 Cal.2d at pp. 408-409.) However, whether direct or indirect, where the hearing on the contempt is continued to a later date, basic due process requires that the hearing be before a truly impartial judge.
 
 (Mayberry
 
 v.
 
 Pennsylvania
 
 (1971) 400 U.S. 455. 465 [27 L.Ed.2d 532. 540. 91 S.Ct. 499];
 
 In re Buckley
 
 (1973) 10 Cal.3d 237. 255-256 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248].)