[No. C066860. Third Dist. Apr. 4, 2012.]

In re the Marriage of LORAIN RICE and THOMAS EATON.
LORAIN RICE, Appellant, v.
THOMAS EATON, Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II. and III. of the Discussion.

### Counsel

Lorain Rice, in pro. per., for Appellant.

Woodruff, O'Hair, Posner & Salinger and Jeffrey J. Posner for Respondent.

### Opinion

**BUTZ, J.**—Lorain Rice appeals from two court orders—one dismissing her motion to have Thomas Eaton held in contempt for failing to pay child support, and the other compelling Rice to pay $1,000 in attorney fees to Eaton as sanctions under Family Code section 271 (hereafter section 271).

Rice contends the trial court erred in dismissing her motion, erred in ordering her to pay sanctions, and erred in ordering the sanctions to be offset against child support owed by Eaton. We find each of Rice's claims to have merit and shall reverse the trial court's orders accordingly.

## FACTUAL BACKGROUND

In May 2006, Eaton was ordered to pay to Rice $2,524 each month (retroactive to Jan. 2005) for the support of their daughter, then seven years

old. In April 2008, at Rice's request, the Placer County Department of Child Support Services (DCSS) opened a case to enforce that order of support.

In August 2008, DCSS filed a motion for an "Order to Show Cause and Affidavit for Contempt" (hereafter OSC re Contempt), seeking to have Eaton held in contempt for failing to pay child support in May, June, and July 2008. Eaton was properly served but failed to appear at the scheduled hearing. DCSS estimated that Eaton owed in excess of $96,000 in child support arrears. Accordingly, a $50,000 bench warrant was issued for Eaton's arrest.

At that same hearing, Rice (who appeared telephonically and without counsel) asked why Eaton was being charged with only three counts of contempt totaling $7,500. Rice noted that Eaton had not made a single child support payment since the order of support was issued in May 2006. The court advised Rice that charging Eaton with only three counts was a decision within DCSS's discretion. The court further advised Rice that she could bring her own motion to have Eaton held in contempt on the months not alleged by DCSS.

Eaton subsequently signed a "Promise to Appear," and on January 7, 2009, Eaton appeared before the court to answer the contempt charges. Eaton was represented by counsel, DCSS was present, and Rice again appeared telephonically and without counsel. On the record DCSS's counsel indicated DCSS met with Eaton and his counsel prior to the hearing and a plea agreement had been reached. Surprised, Rice requested a continuance.

Rice explained to the court that she had been "having a problem" with DCSS. An administrative hearing with DCSS was scheduled in four weeks to address her concerns, and she asked the court to postpone taking Eaton's plea until that hearing was completed. The court asked Rice how that hearing would impact Eaton's plea. Rice responded, "[T]he contempt amount will be different. Instead of just [$6,000], it will be more."

The court denied Rice's request to continue the hearing. The court again advised Rice, "If you want to file a separate OSC re Contempt, you're entitled to do that." Rice expressed her concern that any order issued by the court or any plea taken would have to be vacated after the administrative hearing. DCSS's counsel disagreed, stating, "Well, I think we attempted to explain this to Miss Rice on more than one occasion. The fact that the OSC re Contempt only charges for the specific months in question, three months in this case; does not mean that that's the extent of the arrears that are owed in

this case. There is no compromise of any kind of arrears, simply by the fact that we charge for the months when the case has been opened in our offices."

Rice again expressed her concern that DCSS did not have the correct amount of arrearages owed by Eaton, noting that this was a contempt hearing—not a hearing to determine arrearages. The following colloquy then took place between DCSS and Rice:

"[DCSS]: Miss Rice, Miss Rice, at your insistence we have taken an enforcement action in the form of an OSC re Contempt. [¶] Mr. Eaton is prepared to enter a plea today and start making payments. [¶] Are you objecting to that?

"[RICE]: There is nothing to preclude him from making payments.

"[DCSS]: There is nothing precluding him from making payments. You're absolutely correct. [¶] So, we could take his plea today, and enter into a plea, put him on probation for one year; and/or we could do nothing and that we may actually dismiss the contempt, and let him just pay on his own. [¶] This is your choice. This is your choice at this point. [¶] What would you like us to do? [¶] I don't see any reason why we have to continue an arraignment, when he's prepared to enter a plea and start making payments.

"[RICE]: He should be prepared to start making payments. Regardless of entering any plea, he can always make the payments. And the point would be moot. Therefore, I'm asking for this to be continued until after the Administrative Hearing, because I do believe that it will change things as far as what you're filing the contempt for.

"[DCSS]: I don't—I think you may have a misunderstanding as to what an Administrative Judge would do in this case. I don't think an Administrative Judge is going to order that I file a contempt in a certain manner or not in a certain manner. [¶] I think this is good for you. That he's willing to enter a plea. Hopefully, you will start seeing money consistently every month real soon.

"[RICE]: Just start seeing money. I should have seen money consistently for the past two years. Four [*sic*] weeks of money out of $96,000 is really not going to make much difference for me. And I can be better informed to prepare to make a decision. You're asking me things, that were not to be adjudicated today."

The court then interrupted the discussion between DCSS and Rice, denied Rice's request to continue the hearing, and proceeded to take Eaton's plea. The terms of Eaton's plea were recited by his counsel: Eaton would admit to two counts of contempt, be placed on probation for one year, and be sentenced to 10 days in county jail, suspended, and ordered to pay the current monthly child support of $2,524 plus arrearages of $676 per month, for a total monthly payment of $3,200.

The remaining charge of contempt would be dismissed after Eaton successfully completed his probation. The court accepted Eaton's plea.

Shortly thereafter, Rice filed her own OSC re Contempt. In her supporting affidavit, Rice alleged that Eaton failed to pay child support nearly every month for 26 months, between May 2006 and December 2008.[1]

On February 10, 2010, Eaton pleaded not guilty to the 26 counts of contempt alleged in Rice's supporting affidavit. The court noted the amount of arrears owed by Eaton had not yet been determined. Eaton suggested the court could simply look at the audit prepared by DCSS to determine arrearages, but Rice disagreed with the amount reflected in the audit. In fact, Rice pointed out the issue of determining arrearages was set for trial at a future date.

The court then asked Rice whether DCSS was still involved in enforcement of the child support order. Rice responded, "They are involved in my case just to—I have asked them to be involved with my case. We went to an administrative hearing, and they said that they were handling enforcement the way that they proceed in their agency. [¶] And at that contempt date, according to this transcript, you gave me permission to file the paperwork on my own, and that's what I have had to do, so—[¶] . . . [¶]—although I do have an open case with them, they have nothing to do with this motion to determine arrearage or the motion for contempt. [¶] It would be nice if they did that, but they have declined to do that, so that is why I had to proceed on my own."

DCSS, represented at the February 10 hearing, added, "The Code allows parties who are asking us for services to take action on their own, and so that's what she's choosing to do. [¶] Your Honor, we have no objection to her

---

[1] Although the order for child support issued on May 2006 was made retroactive to January 2005, Rice did not allege Eaton failed to pay child support between January 2005 and May 2006.

taking her independent action. I believe this Court can have jurisdiction to hear any support issues under the statute. And my furnishing of an audit is simply to facilitate the passing of information to this Court with respect to records that we have that I thought would pertain to her actions before the Court today."

The court then took under submission several other motions and set for trial Rice's motion to determine arrearages and her OSC re Contempt. Three additional motions before the court, including Eaton's motion to modify child support, Rice's motion to stay the proceedings, and Rice's motion to modify Eaton's payment on arrears, were all continued.

On August 10, 2010, the parties appeared for trial on Rice's OSC re Contempt as well as her motion to determine arrearages.[2] The parties stipulated that the court ordered Eaton to pay $2,525 each month in child support to Rice effective January 5, 2005. Eaton then moved to dismiss Rice's OSC re Contempt on several grounds including Eaton's claim that double jeopardy attached to all claims of contempt in existence at the time he entered his plea in January 2009.

The trial court expressed its own concern that, under *Kellett v. Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206] (*Kellett*), Rice was barred from pursuing her OSC re Contempt because the claims alleged were known to DCSS when it entered into a plea agreement with Eaton in January 2009.[3] The trial court also noted that each month Eaton failed to pay child support was "arguably . . . a separate contempt."

In response to the court's concerns, Eaton claimed that DCSS was aware of his numerous failures to pay child support but chose to charge him with only three counts. Thus, he argued under *Kellett*, Rice was precluded from pursuing any of those claims now.

Eaton also argued that the court was precluded from punishing him for failing to pay child support prior to December 2008 because "he was put on probation for the full amount of the arrearages up to the time of sentencing . . . and it was all considered in his punishment." Thus, he argued, double jeopardy had attached.

---

[2] There were additional motions to be heard, none of which are relevant to the issues raised in this appeal.

[3] In raising this issue, the trial court relied on an article authored by Stephen A. Kolodny, Esq., wherein Kolodny opines that "[b]y analogy to criminal law, one must allege all wrongful acts known to the moving party at the time of the filing of the contempt citation or they may be barred from subsequent 'piecemeal' filing of further contempt charges based upon the 'old' facts. (*Kellett v. Superior Court*[, *supra*,] 63 Cal.2d 822, 827.)" (Stephen A. Kolodny, *Family Law Contempts* (43d Annual Family Law Symposium, L.A. County Bar Assn.) (2011) § 12, p. 12035.)

Rice had a different recollection of events. Rice claimed that Eaton's plea, which he entered at the January 7, 2009 hearing, resolved only the arrears accrued in May, June, and July 2008. Rice noted that at the time of the plea, DCSS did not know the full amount of arrearages, thus making it impossible to resolve the full amount in the plea. Rice further claimed that DCSS expressly stated it was limiting the charges to three months because the file had only been open in DCSS's office for three months.

The court took the matter under submission and invited additional briefing and argument. The court also agreed to obtain a reporter's transcript of the January 2009 contempt hearing in order to better understand Eaton's plea agreement. The parties were ordered to return to court for further hearing on the contempt allegations and a determination of arrearages.

The parties returned to court on September 20, 2010, on Eaton's motion to dismiss. Eaton continued to argue that his plea in January 2009 was "based upon the Court's consideration of the total amount of arrearages." It remained Eaton's position that the conditions of his probation encompassed every month he failed to pay child support prior to his plea. Otherwise, he argued, his arrears would have been paid off before his probation was completed. Rice disagreed. She continued to argue that the plea resolved only the three months charged by DCSS in its OSC re Contempt.

DCSS explained it alleged only three counts of contempt because it only had the file open for three months. Thus, DCSS charged Eaton from the first month it had given him notice of his failure to pay. DCSS further explained that in reaching the amount of Eaton's monthly payment there was no discussion about whether the amount would resolve every existing claim for contempt. Rather, DCSS wanted the monthly payment to "cover interest so that [Eaton's] arrears balance would not grow even larger."

DCSS also remembered that Eaton's only express condition during plea negotiations was that the total monthly payment including arrears and current support be a "round number." DCSS did acknowledge that, while it did not consider the balance of arrears owing during the plea negotiations, at the time of the hearing on its contempt petition DCSS knew Eaton's arrears were "fairly significant."

The court ruled on Eaton's motion to dismiss Rice's OSC re Contempt as follows: "[I]n this case what I'm hearing is that the prosecuting agency [(DCSS)] was aware at the time when the plea was entered that there [were]

other arrears that predated this matter going to trial and to judgment. [¶] So I recognize this may not feel fair, but I'm going to grant the motion to dismiss. That doesn't mean Dr. Eaton doesn't owe the money. He most certainly does. It's just a question of whether he can go to jail for it. And so at this point [the] motion to dismiss is granted."

We discuss Rice's remaining motions in the unpublished portion of the Discussion.

## DISCUSSION

■ "A civil contempt proceeding is criminal in nature because of the penalties that may be imposed. (*Raiden v. Superior Court* (1949) 34 Cal.2d 83 [206 P.2d 1081].)" (*In re Witherspoon* (1984) 162 Cal.App.3d 1000, 1001 [209 Cal.Rptr. 67].) "Alleged contemners are entitled to most constitutional rights guaranteed to all criminally accused persons. (*In re Martin* (1977) 71 Cal.App.3d 472 [139 Cal.Rptr. 451].)" (*In re Witherspoon*, at pp. 1001–1002, fn. omitted.)

Accordingly, an alleged contemner cannot be serially prosecuted for contemptuous acts that occur in the same course of conduct under *Kellett, supra*, 63 Cal.2d at page 827. An alleged contemner also is protected by the doctrine of double jeopardy. Neither of these legal principles, however, is applicable under the circumstances presented here.

## I. *Kellett* and Its Progeny

Rice contends the trial court erred in dismissing her OSC re Contempt for Eaton's failure to pay child support. We agree. Relying on *Kellett*, the trial court found that Rice was barred from pursuing her OSC re Contempt because DCSS was aware of all Eaton's arrears "that predated this matter going to trial and to judgment." The trial court misunderstood the Supreme Court's ruling in *Kellett*.

■ In *Kellett*, the Supreme Court held "some acts that are divisible for the purpose of punishment must be regarded as being too interrelated to permit their being prosecuted successively." (*Kellett, supra*, 63 Cal.2d at p. 827.) In determining whether acts are too interrelated to be prosecuted successively, courts consider whether the acts occurred in a different time and place. (*People v. Cuevas* (1996) 51 Cal.App.4th 620, 624–626 [59 Cal.Rptr.2d 146].) Courts also look at whether the acts overlap in beginning, duration, or end (*People v. Douglas* (1966) 246 Cal.App.2d 594, 599 [54 Cal.Rptr. 777] (*Douglas*)), and whether evidence of one act necessarily supplies proof of another act (*People v. Valli* (2010) 187 Cal.App.4th 786, 798–800 [114

Cal.Rptr.3d 335]; *People v. Hurtado* (1977) 67 Cal.App.3d 633, 636 [136 Cal.Rptr. 774]; *People v. Flint* (1975) 51 Cal.App.3d 333, 337–338 [124 Cal.Rptr. 269]).

■ *Kellett* does not require, as the trial court's ruling suggests, that prosecutors "proceed against a defendant simultaneously for all known offenses, whether related to one another or not, in order to guard against the possibility of harassment." (*Douglas, supra,* 246 Cal.App.2d at p. 599.) Thus, whether DCSS knew of Eaton's repeated failure to pay child support was not the relevant issue. The issue the trial court should have considered was whether each month Eaton failed to pay child support was so interrelated with every other month he failed to pay child support that the contempt charges had to be charged together.

■ Code of Civil Procedure section 1218.5 clearly states that each month for which payment of child support is not made in full "may be alleged as a separate count of contempt." (Code Civ. Proc., § 1218.5, subd. (a).) Thus the Legislature has declared that each month Eaton failed to pay child support is a divisible act of contempt. Accordingly, by statute, Eaton's repeated failures to pay child support do not constitute a continuing course of conduct that must be charged simultaneously.

Moreover, because each month that Eaton failed to pay child support is a separate act of contempt, the acts do not overlap in beginning, duration or end; they each occur at different times; and evidence he failed to pay child support in one month does not supply proof that he failed to pay child support in another month. Thus, by any established measure, Eaton's numerous failures to pay child support are not so interrelated as to require that they be charged simultaneously. Accordingly, *Kellett* is inapplicable.

## II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The trial court's orders dismissing Rice's OSC re Contempt and compelling Rice to pay $1,000 in attorney fees to Eaton are hereby reversed and

---

*See footnote, *ante*, page 1073.

vacated. The matter is remanded for a trial on Rice's OSC re Contempt. Costs are awarded to Rice. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Hull, Acting P. J., and Murray, J., concurred.