[Civ. No. 32829. First Dist., Div. Two. Nov. 27, 1973.]

MAURICE S. MARCUS, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD, Respondent.

## COUNSEL

Maurice S. Marcus, in pro. per., and Stephen N. Rosen for Petitioner.

Charles Lawrence Swezey, Sheldon C. St. Clair, Franklin O. Grady and Thomas McBirnie for Respondent.

## OPINION

**TAYLOR, P. J.**—Petitioner in fact, Maurice S. Marcus, an attorney, seeks review and annulment of an en banc order of the Workmen's Compensation Appeals Board adjudging him in contempt of the board and ordering him to pay a fine of $100 within 30 days or be committed to the county jail to be imprisoned for a period of 5 days.

The alleged contempt occurred during the course of a hearing before a referee in which petitioner represented an applicant for workmen's compensation benefits, when, understandably provoked by an implication that he had fabricated evidence, petitioner stepped down from the stand, where he was being examined by Walter G. Watson, attorney for the carrier, and knocked down opposing counsel with a blow to the jaw. The incident occurred in the hearing room in the presence of the referee, the reporter, applicant, and two claims adjusters.

The record reveals that the allegedly contemptuous incident occurred on September 8, 1971. On October 22, 1971, the carrier, State Compensation Insurance Fund, filed a petition, supported by affidavits, asking that sanctions be applied against petitioner pursuant to Labor Code section 4907.[1] On December 10, 1971, petitioner requested similar relief against Watson.

On June 16, 1972, the board issued an opinion denying both parties the relief requested but directing that a citation be served on petitioner ordering him to show cause why he should not be punished for contempt.[2]

---

[1]Section 4907 reads as follows: "The privilege of any person, including attorneys admitted to practice in the Supreme Court of the state to appear in any proceeding as a representative of any party before the appeals board, or any of its referees, may, after a hearing, be removed, denied, or suspended by the appeals board for a violation of this chapter or for other good cause."

[2]Although the board indicated that it did not condone disruptive conduct in the presence of its referees, it concluded that the single isolated instance of misconduct did not demonstrate unfitness to practice before the board.

On August 15, 1972, almost a year after the occurrence of the incident, the board served upon petitioner a citation for contempt, devoid of affidavits, with an order to show cause on September 14, 1972, why he should not be punished for contempt for the incident occurring on September 8, 1971.

On September 11, 1972, over a year after the incident occurred, the board served another copy of the contempt citation upon petitioner, this time accompanied by copies of the three affidavits which had been submitted to it by the carrier in the disciplinary proceedings under Labor Code section 4907.

On September 14, 1972, petitioner appeared before the referee assigned to hear the case at the direction of the board and objected to the jurisdiction of the board. The referee presiding ordered the hearing to proceed, whereupon testimony was taken from various witnesses, including the trial referee.

A transcript of the hearing on the order to show cause was submitted to the board and on December 14, 1972, the board issued its opinion and judgment of contempt.

On January 3, 1973, petitioner filed a petition for reconsideration, which was dismissed by the board on February 1, 1973.[3]

The sole issue is whether or not the board had jurisdiction to adjudge petitioner in contempt.

Petitioner does not deny that Labor Code section 134 confers upon the board the power to protect its integrity and dignity and to insure the orderliness of its proceedings through the use of the contempt power. Petitioner contends, however, (1) that the board exceeded its jurisdiction when it cited him and adjudged him guilty of contempt for events that had taken place at a hearing before a referee 11 months before the order to show cause was served upon him, when the referee had not cited him for contempt or issued an order to show cause at the time of the alleged contemptuous act; (2) the board may not treat the contempt, which allegedly took place in a hearing room while witnesses and the trial referee were present, as an indirect contempt of the board.

---

[3]No right to reconsideration of a contempt order exists under Labor Code section 5900. The proper remedy is a petition for writ of certiorari or, in the case of a jail sentence, an application for a writ of habeas corpus, addressed in either instance to the Court of Appeal (*Loustalot* v. *Superior Court,* 30 Cal.2d 905 [186 P.2d 673]; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 14.03(3) (c)).

■ It is well settled that the Workmen's Compensation Appeals Board is a tribunal of limited jurisdiction, with no powers beyond those conferred upon it by section 21 of article XX of the state Constitution and the provisions of the Labor Code (*State Comp. Ins. Fund* v. *Ind. Acc. Com.*, 20 Cal.2d 264, 266 [125 P.2d 42]; *Corley* v. *Workmen's Comp. Appeals Bd.*, 22 Cal.App.3d 447, 459 [99 Cal.Rptr. 242]).

Section 134 of the Labor Code provides that *"The appeals board or any member thereof* may issue writs or summons, warrants of attachment, warrants of commitment and all necessary process in proceedings for contempt, *in like manner and to the same extent as courts of record"* (italics added).[4] In addition, Labor Code section 133 provides that the appeals board "shall have power and jurisdiction to do all things necessary or convenient in the exercise of any power or jurisdiction conferred upon it under this code." It is clear that whatever contempt powers the board may have are provided in Labor Code sections 133 and 134 (*Loustalot* v. *Superior Court, supra,* p. 908).

Section 123 of the Labor Code provides for the employment of referees. Under the provisions of section 5310 of the Labor Code, the referee "has the powers, jurisdiction, and authority granted by law, by the order of appointment, and by the rules of the appeals board." Although the powers granted to referees by statute are broad (see 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1973) § 1.03(3)(d); Bancroft, *Some Procedural Aspects of the California Workmen's Compensation Law* (1952) 40 Cal.L.Rev., pp. 378, 382-385), no statute expressly vests a referee with the power to punish for contempt.

Pursuant to the authority given to it by the Legislature to adopt reasonable and proper rules of *practice and procedure* (Lab. Code, § 5307), the board has promulgated and adopted rule 10800 which provides that: "A referee may issue adjudgments for contempt committed in his presence, warrants of commitment and all necessary processes in proceedings for contempt, having the full authority in such contempt proceedings in accordance with provisions of Labor Code Section 134."

The board admits, however, that no court decision establishes or upholds the "presumed" contempt power of an appeals board referee, notes that the

---

[4]An analogous provision appears in section 312 of the Public Utilities Code as follows: "The *commission and each commissioner* may issue writs of summons, subpenas, warrants of attachment, warrants of commitment, and all necessary process in proceedings for contempt, in like manner and to the same extent as courts of record. . . ." (Italics added.)

precise language of Labor Code section 134 limits the exercise of the contempt power to "the appeals board or any member thereof," and concludes that "In view of this, the more universally recognized and accepted procedure in a matter such as that herein would seem to be for the Appeals Board, rather than the trial referee, to initiate and conduct the contempt proceedings."

Contempts against subordinate officers appointed by a court are usually regarded as contempts of the authority of the appointing court, and the appointing court has power to punish such contempts. This is generally true even where such subordinate officers are themselves vested with the power to punish (17 C.J.S., Contempt, § 52; 17 Am.Jur.2d, Contempt, § 116; *Gaylon* v. *Stutts,* 241 N.C. 120 [84 S.E.2d 822]).

While court commissioners and referees have been authorized in some jurisdictions to punish disobedience of their orders as contempts, it has been held that, in the absence of express authority, such officers have no such power (17 C.J.S., Contempt, § 53; 17 Am.Jur.2d, Contempt, § 117). It has been held in California that nonjudicial officers have no power to punish for contempt unless specially so authorized by law (*People* v. *Schwarz,* 78 Cal.App. 561, 570 [248 P. 990]; 12 Cal.Jur.2d, Contempt, § 39).[5]

Our research has disclosed no California case in which a subordinate officer, court commissioner, or referee has been permitted to summarily exercise the power of contempt.[6] The power to punish for contempt is not included within the statutory powers and duties of court commissioners (Code Civ. Proc., §§ 259, 259a).[7] Disobedience of an order of a referee may be punished as a contempt only by the court or judge ordering the reference (Code Civ. Proc., § 721). Code of Civil Procedure section 1211 limits the exercise of the power of contempt to the court or judge thereof,

[5]A grand jury, for example, although part of the court, has no power to punish for contempt (*In re Gannon,* 69 Cal. 541 [11 P. 240]).

[6]A judgment of imprisonment for contempt in failing to comply with a support order was upheld, however, when the record showed that a presiding judge had appointed the commissioner as a judge *pro tempore* (Code Civ. Proc., § 259a, subd. 4) and the contemner had *stipulated* that the contempt hearing should be held with the commissioner sitting as judge *pro tempore* (*In re Gould,* 195 Cal.App.2d 172 [15 Cal.Rptr. 326]; see also *People* v. *Tijerina,* 1 Cal.3d 41, 49 [81 Cal.Rptr. 264, 459 P.2d 680]; *Rooney* v. *Vermont Investment Corporation* (L.A. No. 30088, filed 11-2-73) 10 Cal.3d 351 [110 Cal.Rptr. 353, 515 P.2d 297]).

[7]The California Constitution, article VI, section 22 (added Nov. 8, 1966), permits the Legislature to provide for the appointment by trial courts of record of officers, such as commissioners to perform subordinate judicial duties (see Witkin, Cal. Procedure (2d ed. 1970) Courts, p. 480).

and the last sentence would appear to require that contempts of subordinate officers be reported to the court rather than adjudicated directly.[8]

■ We conclude that the power to punish for contempt is a judicial power of the highest degree that the Legislature has, pursuant to the provisions of Labor Code section 134, vested exclusively in the "appeals board or any member thereof," and is a power which may not be delegated by the appeals board to a referee (see *Burns* v. *Superior Court,* 140 Cal. 1, 12-13 [73 P. 597]; *Crocker* v. *Conrey,* 140 Cal. 213, 216-217 [73 P. 1006]).[9]

By statute, the appeals board consists of seven members (Lab. Code, § 111), appointed by the Governor with the advice and consent of the Senate (Lab. Code, § 112). ■ It is clear that a referee is not a *member* of the appeals board.[10] ■ Since the referee had no power to summarily adjudicate a contempt, it was proper for the board to proceed by way of order to show cause supported by affidavit (Code Civ. Proc., §§ 1211, 1212). Although a delay of 50 days in adjudging a *direct* contempt was held sufficient to cause a court to lose jurisdiction to punish for contempt in *In re Foote,* 76 Cal. 543 [18 P. 678], that rule does not apply in the case of an *indirect* contempt proceeding instituted by order to show cause supported by affidavit.

The board admits that it would have been preferable to proceed in a more expeditious manner. We note, however, that the disciplinary proceeding under Labor Code section 4907, which could have resulted in the loss of petitioner's privilege to practice before the board, was instituted soon after the incident, and that the board, upon concluding the disciplinary matter, promptly directed the issuance of the order to show cause why petitioner should not be held in contempt. ■ In the absence of a

---

[8]Code of Civil Procedure section 1211 provides, in part, as follows: "When the contempt is not committed in the immediate view and presence of the court, or of the judge at chambers, *an affidavit shall be presented* to the court or judge of the facts constituting the contempt, *or a statement of the facts by the referees or arbitrators, or other judicial officers.*" The affidavits filed by Watson and the two claims examiners who witnessed the incident show facts constituting a contempt and were sufficient to give petitioner notice of the charges against him (Code Civ. Proc., §§ 1211, 1211.5).

[9]It was not until 1967 (Stats. 1967, ch. 1453, § 1) that appeals board referees were required by statute to be taken from an eligible list of attorneys having the qualifications prescribed by the State Personnel Board (Lab. Code, § 123.5). Although Labor Code section 123 directs the State Personnel Board to fix the salaries of referees "for a class of positions which perform judicial functions," it has been held that their duties are comparable to those of hearing officers and legal examiners with other state agencies rather than those of judges and commissioners (appeals board members) (*Conference of Referees* v. *State Personnel Board,* 262 Cal.App.2d 131 [68 Cal.Rptr. 563]).

[10]Labor Code section 111 provides that the appeals board "consisting of seven members, shall exercise all judicial powers vested in it under this code."

showing of prejudice to the petitioner, we conclude that the delay in instituting the contempt proceedings, partly due to the actions of petitioner, was not unreasonable.[11]

Assuming, however, that Labor Code section 134 confers upon the "appeals board *or any member thereof*" the power to punish for contempt "in like manner and to the same extent as courts of record," sections 1217 and 1218 of the Code of Civil Procedure would apply.[12] In the case of an indirect contempt, section 1217 of the Code of Civil Procedure provides that ". . . the *court or judge* must proceed to investigate the charge, and *must hear any answer* which the person arrested may make to the same, and may examine witnesses for or against him . . ." (italics added). ■ The board's procedure in assigning a referee to hear the matter and thereafter adjudicating petitioner in contempt in absentia, on the basis of a transcript of the proceedings, was not in accordance with the statute or with due process. Petitioner is entitled to appear before and be heard by the tribunal which pronounces judgment upon him (see *Arthur* v. *Superior Court,* 62 Cal.2d 404, 408-409 [42 Cal.Rptr. 441, 398 P.2d 777]).

The order adjudicating petitioner in contempt is annulled, and the matter is remanded to the board with directions to afford petitioner a hearing before the board or *a member thereof* and to conduct his trial in accordance with the provisions of Code of Civil Procedure section 1217.

Kane, J., and Rouse, J., concurred.

Petitions for a rehearing were denied December 27, 1973, and the opinion and the judgment were modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied February 21, 1974.

---

[11]On November 3, 1971, petitioner notified the board that extensive pretrial discovery would be necessary and requested that the disciplinary hearing not be held until a certificate of readiness was filed by the parties. The opinion in the disciplinary proceeding was issued on June 16, 1972. On July 11, 1972, petitioner requested that any contemplated hearing on the contempt citation be set after August 21, 1972.

[12]Section 1217 of the Code of Civil Procedure provides as follows: "When the person arrested has been brought up or appeared, *the court or judge* must proceed to investigate the charge, and *must hear any answer* which the person arrested may make to the same, and may examine witnesses for or against him, for which an adjournment may be had from time to time if necessary." (Italics added.)

Section 1218 provides, in part, as follows: "Upon the answer and evidence taken, the *court or judge* must determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he is guilty of the contempt, a fine may be imposed on him not exceeding five hundred dollars ($500), or he may be imprisoned not exceeding five days, or both; provided, however, that in justice courts the judge may punish by fine or imprisonment or both, such fine not to exceed, in any case, one hundred dollars ($100), and such imprisonment one day; the conviction, specifying particularly the offense, and the judgment thereon, must be entered in the docket." (Italics added.)