[L.A. No. 31384. Dec. 7, 1981.]

EDWARD F. HUSTEDT, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, Respondent.

330

COUNSEL

George V. Denny III for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Robert M. Sweet as Amici Curiae on behalf of Petitioner.

Richard W. Younkin, William B. Donohoe, Dexter W. Young and Valerie L. Westen for Respondent.

OPINION

**BIRD, C. J.**—Does the separation of powers doctrine preclude the Legislature from granting to the Workers' Compensation Appeals Board (Board) the power to discipline an attorney by temporarily or permanently prohibiting him or her from practicing before the Board? Does the Board have authority to proceed with the contempt action it instituted against petitioner?

I.

Petitioner, Edward F. Hustedt, was admitted to the practice of law in this state on January 5, 1966.

In 1978, Hustedt was retained to represent a defendant employer in a compensation case pending before the Board. On or about March 2, 1979, Hustedt received notice that the case had been set for conference on March 22 before Workers' Compensation Judge Clayton Robins. On that date, Judge Robins adjourned the conference hearing to March 26, at 9 a.m. Hustedt appeared through an associate who did not object to the adjournment. The next day, Hustedt called the judge and informed him that he could not appear until the afternoon. After some discussion,

the judge told Hustedt that if someone from his firm were not present at 9 a.m., contempt proceedings would be initiated against Hustedt.

On March 26, neither Hustedt nor any other member of his firm appeared at the appointed time. Instead, at 8 a.m. that morning, Hustedt had an associate in his firm file a petition to disqualify Judge Robins on the grounds of bias and prejudice.[1]

When the hearing convened, Judge Robins informed opposing counsel that a petition to disqualify him had been filed that morning. The judge then called a recess so that he could contact the Board to determine how he should proceed. On his return, the judge announced that he was recusing himself. The petition to disqualify was so inflammatory Judge Robins felt he could not continue in the case. Moreover, his recusal would prevent delay.

Shortly thereafter, Judge Robins recommended to the Board that it order Hustedt to show cause why he should not be held in contempt and why he should not be suspended from the practice of law before the Board. As a result of the judge's recommendation, concurrent contempt and disciplinary proceedings were initiated against Hustedt in July 1979. Both proceedings were based on (1) Hustedt's alleged willful failure to appear at the hearing on March 26, and (2) his filing of the petition for disqualification. The Board alleged that the petition not only contained contemptuous statements but also had been filed for the purpose of delaying proceedings in the compensation case.

The trial in the contempt and disciplinary actions was continued several times so that the Board could consider Hustedt's pretrial motions.[2]

---

[1]The bias and prejudice which must be shown in order to disqualify a workers' compensation judge is bias and prejudice against a party. (Lab. Code, § 5311; Code Civ. Proc., § 641, subd. 7; cf. *Shakin v. Board of Medical Examiners* (1967) 254 Cal.App. 2d 102, 118-119 [62 Cal.Rptr. 274, 23 A.L.R.3d 1398].) Five of the six averments in Hustedt's petition recounted prior derogatory comments allegedly made by Judge Robins about Hustedt or his firm. The sixth averment alleged that Robins had termed the employer's representative, Andre Herzfeld, a "Nazi." Herzfeld worked for Universal Self Insurance, a defendant in the case. Judge Robins specifically denied this allegation and denied making the two most derogatory comments about Hustedt which were attributed to him in the petition.

[2]The trial of both matters was originally scheduled to begin on July 25, 1979. Apparently, the trial in the disciplinary action was to follow the trial on the contempt charges. By mutual consent, the trial date was continued to October 29, 1979. Prior to that date, petitioner filed demurrers to both of the orders to show cause and moved to dismiss the actions. Argument on these motions was heard on October 29. Petitioner waived time to January 14, 1980, for a decision and then agreed to a further continu-

Following the denial of these motions, petitioner filed a petition for writ of prohibition to bar the Board from proceeding with either the contempt action or the disciplinary proceeding.

## II.

The Board initiated the disciplinary proceeding against petitioner pursuant to Labor Code section 4907. That section sets forth that "[t]he privilege of any person, including attorneys admitted to practice in the Supreme Court of the state to appear in any proceeding as a representative of any party before the appeals board, or any of its referees, may, after a hearing, be removed, denied, or suspended by the appeals board for a violation of this chapter or for other good cause."

Petitioner now seeks to prevent the Board from completing this disciplinary proceeding. He argues that the 1929 amendment to section 4907, which granted the Board disciplinary power over attorneys, is unconstitutional.[3]

Certain preliminary matters are clear. This court has not previously addressed the constitutionality of the 1929 amendment. The Board, relying upon *Eagle Indem. Co.* v. *Industrial Acc. Com.* (1933) 217 Cal. 244 [18 P.2d 341], half-heartedly disputes this but its contention lacks merit. *Eagle Indemnity* declared constitutional the statute allowing a party in a compensation proceeding to be represented by a nonattorney. (See Lab. Code, § 5700.) The constitutionality of the 1929 amendment to section 4907 was simply not at issue in the case.

Neither party disputes that the 1929 amendment to section 4907 is a regulation affecting the practice of law. It is well established that "participation on behalf of another in hearings and proceedings before a board or commission constitutes the practice of law. The cases uniformly hold that the character of the act, and not the place where it is

ance to February 11, 1980. On February 6, the Board summarily denied the motions to dismiss, overruled the demurrers, and issued an amended order to show cause in each of the actions. On February 11, petitioner agreed to a continuance of the trial date to March 24, 1980. Prior to trial, petitioner again filed demurrers and motions to dismiss. These motions were denied by the Board on March 10, 1980.

[3]As originally enacted in 1923, section 4907 authorized the Board (formerly known as the Industrial Accident Commission) to suspend or remove from practice any person *except* attorneys licensed to practice law. (Stats. 1923, ch. 381, § 1, pp. 772, 773-774.) In 1929, the Legislature amended the section to extend the Board's power to take disciplinary action to attorneys licensed, or admitted to practice, by this court. (Stats. 1929, ch. 173, § 1, pp. 323, 324.)

performed, is the decisive element, and if the application of legal knowledge and technique is required, the activity constitutes the practice of law, even if conducted before an administrative board or commission." (*Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 543 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036]; see generally Annot., Handling, Preparing, Presenting, or Trying Workmen's Compensation Claims or Cases as Practice of Law (1965) 2 A.L.R.3d 724.)

■ Relying upon the separation of powers doctrine, petitioner contends that the power to regulate the practice of law, including the power to discipline attorneys, is an inherent power of the judiciary which the Legislature is forbidden by the California Constitution from conferring upon the Board.[4] Article XIV, section 4, which authorizes the Legislature to establish a complete system of workers' compensation, does not provide a constitutional basis for the grant of this judicial power to the Board by the Legislature. Therefore, petitioner contends, the Legislature violated the separation of powers doctrine when it adopted the 1929 amendment to section 4907.

Petitioner's first premise, that the discipline of attorneys is a judicial function, is undisputed. Article VI, section 1, of the California Constitution vests the judicial power of this state in the Supreme Court, Courts of Appeal, superior courts, municipal courts and justice courts. ■ Since the "courts are set up by the Constitution without any special limitations" on their power, they "have ... all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government. [Citations.]" (*Brydonjack* v. *State Bar* (1929) 208 Cal. 439, 442 [281 P. 1018, 66 A.L.R. 1507]; see also *Millholen* v. *Riley* (1930) 211 Cal. 29, 33-34 [293 P. 69]; *In re Garner* (1918) 179 Cal. 409 [177 P. 162]; *Nicholl* v. *Koster* (1910) 157 Cal. 416, 423-424 [108 P. 302].)

In California, the power to regulate the practice of law, including the power to admit and to discipline attorneys, has long been recognized to be among the inherent powers of the article VI courts.[5] Indeed, every

---

[4]The separation of powers doctrine is embodied in article III, section 3 of the California Constitution. "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

[5]This principle, which was first recognized in California in 1850 (*The People* v. *Turner* (1850) 1 Cal. 143, 150), has been reaffirmed on numerous occasions. (E.g., *In re Shattuck* (1929) 208 Cal. 6, 11-12 [279 P. 998]; *Brydonjack* v. *State Bar, supra*, 208 Cal. 439, 443; *In re Lavine* (1935) 2 Cal.2d 324, 328-329 [41 P.2d 161, 42 P.2d 311]; *In re Hallinan* (1954) 43 Cal.2d 243, 253-254 [272 P.2d 768]; *Brotsky* v. *State*

state in the United States recognizes that the power to admit and to discipline attorneys rests in the judiciary. (Martyn, *Lawyer Competence and Lawyer Discipline: Beyond the Bar*? (1981) 69 Geo. L.J. 705, 707, fn. 4.) "This is necessarily so. An attorney is an officer of the court and whether a person shall be admitted [or disciplined] is a judicial, and not a legislative, question." (*In re Lavine, supra*, 2 Cal.2d 324, 328; see also *Stratmore v. State Bar, supra*, 14 Cal.3d 887, 889-890.)[6]

Nevertheless, this court has respected the exercise by the Legislature, under the police power, of "a reasonable degree of regulation and control over the profession and practice of law ..." in this state. (*State Bar of California v. Superior Court* (1929) 207 Cal. 323, 331 [278 P. 432]; *Brydonjack v. State Bar, supra*, 208 Cal. at pp. 442-444.)[7]

*Bar* (1962) 57 Cal.2d 287, 300-301 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310]; *In re Bogart* (1973) 9 Cal.3d 743, 749-750 [108 Cal.Rptr. 815, 511 P.2d 1167]; *Emslie v. State Bar* (1974) 11 Cal.3d 210, 225, 230 [113 Cal.Rptr. 175, 520 P.2d 991]; *Stratmore v. State Bar* (1975) 14 Cal.3d 887, 889-890 [123 Cal.Rptr. 101, 538 P.2d 229, 92 A.L.R.3d 803]; *Merco Constr. Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724, 727-729 [147 Cal.Rptr. 631, 581 P.2d 636].)

[6]The Supreme Court reached this same conclusion in 1866. "[Attorneys] are officers of the court, admitted as such by its order, upon evidence of their possessing sufficient legal learning and fair private character.... The order of admission is the judgment of the court that the parties possess the requisite qualifications as attorneys and counsellors, and are entitled to appear as such and conduct causes therein. From its entry the parties become officers of the court, and are responsible to it for professional misconduct. They hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court .... Their admission or their exclusion ... is the exercise of a judicial power." (*Ex Parte Garland* (1866) 71 U.S. (4 Wall.) 333, 378-379 [18 L.Ed. 366, 370].)

[7]*State Bar of California v. Superior Court, supra*, 207 Cal. at pages 330-331, explained the relationship between the regulation of the legal profession and the general welfare at some length. "'[A]ttorneys ...' form an integral and indispensable unit in our system of administering justice which has come down to us under the name of Anglo-Saxon jurisprudence, and without the constant presence and contacts of which courts could not function nor the orderly administration of justice go on. Attorneys ... have for centuries been required to undergo certain courses of preparation and to assume certain solemn obligations relative to their training, character and conduct as such; and these not only with respect to their relation to the courts, but also with regard to their relation to the public at large. Thus it is that the profession and the practice of the law ... is ... a matter of public interest and concern, not only from the viewpoint of its relation to the administration of civil and criminal law, but also from that of the contacts of its membership with the constituent membership of society at large, whose interest it is to be safeguarded against the ignorances or evil dispositions of those who may be masquerading beneath the cloak of the legal and supposedly learned and upright profession.... It is for ... these reasons that the membership, character and conduct of those entering and engaging in the legal profession have long been regarded as the proper subject of legislative regulation and control; and it has never heretofore been considered, so far as we have been made aware, that, at least in this commonwealth, the exercise of a reasonable degree of regulation and control over the profession and practice of the law, constituted an intrusion into the domain of our state organization constitutionally assigned to the judicial department thereof."

This pragmatic approach is grounded in this court's recognition that the separation of powers principle does not command "a hermetic sealing off of the three branches of Government from one another." (*Buckley* v. *Valeo* (1976) 424 U.S. 1, 121 [46 L.Ed.2d 659, 746, 96 S.Ct. 612].) ▪ Although the doctrine defines a system of government in which the powers of the three branches are to be kept largely separate, it also comprehends the existence of common boundaries between the legislative, judicial, and executive zones of power thus created. (*Brydonjack* v. *State Bar, supra*, 208 Cal. at p. 444.) Its mandate is "to protect any one branch against the overreaching of any other branch. [Citations.]" (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 141 [93 Cal.Rptr. 234, 481 P.2d 242]; accord *Brydonjack* v. *State Bar, supra.*)

Consequently, unless the Legislature is first determined to have overreached its traditionally recognized authority to regulate the legal profession in bestowing the power to discipline attorneys upon the Board, this court need not consider whether the special power granted the Legislature pursuant to article XIV, section 4 authorizes its action.

▪ The standard for assessing whether the Legislature has overstepped its authority and thereby violated the separation of powers principle has been summarized as follows. "[T]he legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions." (*Brydonjack* v. *State Bar, supra*, 208 Cal. at p. 444; accord *In re Lavine, supra*, 2 Cal.2d at p. 328.)

The Board contends that the 1929 amendment to section 4907 does not impair the exercise of this court's inherent power over the discipline of attorneys. The power granted pursuant to that amendment is not, the Board asserts, significantly different from the power granted the State Bar under the State Bar Act (Bus. & Prof. Code, § 6000 et seq.). This court has affirmed the constitutionality of the State Bar Act in the face of a separation of powers challenge. (*In re Shattuck, supra*, 208 Cal. at pp. 9-12; *Brydonjack* v. *State Bar, supra*, 208 Cal. at pp. 444-446.) Similarly, the constitutionality of the amendment at issue should also be affirmed.

Contrary to the Board's bare assertion, the power granted it is significantly different from that granted the State Bar. ▪ Under the State Bar Act (Bus. & Prof. Code, § 6000 et seq.), the State Bar has no power to admit individuals to the practice of law nor to suspend or disbar

them. The act empowers the bar to certify a candidate for admission, or to recommend suspension or disbarment for misconduct but "[*f*]*inal action can only be taken by this court.*" (*Brotsky* v. *State Bar, supra*, 57 Cal.2d at pp. 300-301 [italics added]; see Bus. & Prof. Code, §§ 6064, 6066, 6078, 6081-6083.)

This court's original jurisdiction over disciplinary proceedings is not limited in any manner. For example, the court exercises its independent judgment as to the weight and sufficiency of the evidence and as to the discipline to be imposed. (E.g., *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186]; *Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 980 [126 Cal.Rptr. 801, 544 P.2d 937]; *Brotsky* v. *State Bar, supra*, 57 Cal.2d at p. 301.)

Quite the contrary is true of disciplinary actions determined by the Board pursuant to section 4907. There, it is the Board and not this court that is authorized to take final action. (See *ante*, at p. 335.) Further, an attorney suspended or removed from practice by the Board must seek review of the Board's decision by filing a writ of certiorari. (Lab. Code, §§ 5810, 5950.)[8] By statute, exercise of this court's inherent powers over the discipline of lawyers is expressly prohibited as it pertains to the weight and sufficiency of the evidence. (Lab. Code, § 5952[9]; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) Thus, far from establishing a procedure by which this court's jurisdiction is to be exercised, as does

---

[8]Labor Code section 5810 provides in pertinent part: "The orders, findings, decisions, or awards of the appeals board ... may be reviewed by the courts specified in Sections 5950 to 5956 within the time and in the manner therein specified and not otherwise."

Labor Code section 5950 provides in pertinent part: "Any person affected by an order, decision, or award of the appeals board may, within the time limit specified in this section, apply to the Supreme Court or to the court of appeal for the appellate district in which he resides, for a writ of review, for the purpose of inquiring into and determining the lawfulness of the original order, decision, or award or of the order, decision, or award following reconsideration...."

[9]Labor Code section 5952 provides: "*The review by the court shall not be extended further than to determine,* based upon the entire record which shall be certified by the appeals board, *whether:*

"(a) The appeals board acted without or in excess of its powers.

"(b) The order, decision, or award was procured by fraud.

"(c) The order, decision, or award was unreasonable.

"(d) *The order, decision, or award was not supported by substantial evidence.*

"(e) *If findings of fact are made, such findings of fact support the order, decision, or award under review.*

"*Nothing in this section shall permit the court* to hold a trial de novo, to take evidence, or to *exercise its independent judgment on the evidence.*" [Italics added.]

the State Bar Act (*Brydonjack* v. *State Bar, supra,* 208 Cal. at p. 444), section 4907 purports to restrict significantly this court's inherent power over the disciplining of attorneys.

The constitutional significance of these distinctions between the State Bar Act and section 4907 is settled. These are the very distinctions drawn by this court in rejecting contentions that the Legislature contravened the separation of powers principle when it enacted the State Bar Act.

For example, in *In re Shattuck, supra,* 208 Cal. 6, this court was called upon to consider a recommendation by the State Bar that an attorney be disbarred. The court's jurisdiction was invoked pursuant to a provision in the act authorizing an attorney to file a petition for review. (*Id.,* at p. 8.) In determining the nature of the review it was to undertake, this court opined: "The term 'review' as used in this and in certain other portions of the act we do not understand to bear the limited significance attributed to the 'writ of review or *certiorari*' . . . . To give it such limited meaning would . . . be to consider [the State Bar] as being invested with judicial functions which, under the inhibition of section 1 of article III of the state Constitution, the legislative department of the state government has no power to repose in such a [body]." (*Id.,* at pp. 8-9.) (See also *id.,* at p. 12; *Brydonjack* v. *State Bar, supra,* 208 Cal. at pp. 445-446 [discussing the constitutional significance of the fact that the Legislature did not give finality to State Bar determinations respecting the admission or discipline of attorneys].)

Determining where to "set the stakes along the common boundary between [the legislative and judicial] zones of power" can present a formidable task. (*Brydonjack* v. *State Bar, supra,* 208 Cal. at p. 444.) This case, however, concerns only points on the line heretofore marked by this court's decisions, and those decisions demonstrate that in enacting the 1929 amendment to section 4907, the Legislature overstepped the line.

This court must also heed its primary policy-making role and its responsibility in matters concerning the practice of law. (*Merco Constr. Engineers, Inc.* v. *Municipal Court, supra,* 21 Cal.3d at p. 731.) In this regard, the most authoritative study done to date on disciplinary structures and procedures concluded that it is not sound policy to fragment the authority to discipline lawyers.

In 1967, the American Bar Association formed a special committee, chaired by retired United States Supreme Court Justice Tom Clark, to investigate the effectiveness of state disciplinary structures and procedures. (ABA, Prob. & Recs. in Disciplinary Enforce. (Final Draft 1970) p. xiii.) After a three year study, the Clark committee found that the fragmentation of disciplinary authority within some states was a major defect in their systems, one which significantly impaired the effectiveness of disciplinary enforcement. (*Id.*, at pp. 24-26.) A disciplinary system centralized on a statewide basis would provide more "uniformity in disciplinary enforcement" and "the greatest degree of structural impartiality." (*Id.*, at pp. 26-29.)

The Clark committee concluded that the "'ideal' disciplinary structure" is one in which "exclusive disciplinary jurisdiction" is vested in "the state's highest court," with a single, specialized disciplinary agency responsible for the preliminary investigation, hearing, and determination of complaints. (*Id.*, at pp. xiv-xv.) In 1979, the American Bar Association adopted standards for lawyer disciplinary proceedings which incorporated this model. (See ABA Joint Committee on Prof. Discipline, Stds. for Lawyer Discipline & Disability Proceedings (Final Draft Dec. 1978) stds. 2.1, 3.1; *House Adopts Standards for Lawyer Discipline* (1979) 65 A.B.A.J. 331.)

Moreover, this court has often observed that "[t]he purpose of a disciplinary proceeding is not punitive but to inquire into the fitness of the attorney to continue in that capacity for the protection of the public, the courts, and the legal profession. [Citations.]" (*Bradpiece v. State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337].) Obviously, an attorney, who proves himself or herself unfit to practice law before the Board, is equally unfit to practice law in any other forum. Yet, only this court can order an attorney suspended or disbarred from the practice of law. (Bus. & Prof. Code, § 6100; *Smith v. Superior Court* (1968) 68 Cal.2d 547, 559-560 [68 Cal.Rptr. 1, 440 P.2d 65].) Fragmentation of the disciplinary power between this court and the Board leads to duplicative proceedings if "[t]he public, as well as the legal profession and the courts [are to] be [fully] protected from those who do not measure up to their responsibilities" (*Emslie v. State Bar, supra*, 11 Cal.3d at p. 225).

In purporting to bestow the power to discipline attorneys upon the Board, the Legislature overreached its traditionally recognized authority, under the police power, to regulate the practice of law. This court must next determine whether the Legislature's action is authorized by

some other section of the Constitution. (Cal. Const., art. III, § 3.) The Board contends that the 1929 amendment to section 4907 does not contravene the separation of powers doctrine because article XIV, section 4 of the Constitution inferentially authorizes the Legislature to grant the Board disciplinary power over attorneys.

Article XIV, section 4 opens with this declaration: "*The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create and enforce a complete system of workers' compensation,* by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability, and their dependents for death incurred or sustained by the said workers in the course of their employment, irrespective of the fault of any party." (Italics added.) Section 4 specifically provides that the Legislature's "plenary power" in the workers' compensation arena includes the power to establish "an administrative body *with all the requisite governmental functions* to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character . . . ." (Italics added.)[10]

---

[10]Article XIV, section 4 provides in relevant part: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability, and their dependents for death incurred or sustained by the said workers in the course of their employment, irrespective of the fault of any party. A complete system of workers' compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workers and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment, irrespective of the fault of any party; . . . and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government.

"The Legislature is vested with plenary powers, to provide for the settlement of any disputes arising under such legislation . . . by an industrial accident commission, . . ., and may fix and control the method and manner of trial of any such dispute, the rules of evidence and the manner of review of decisions rendered by the tribunal or tribunals designated by it; provided, that all decisions of any such tribunal shall be subject to review by the appellate courts of this State. . . .

"Nothing contained herein shall be taken or construed to impair or render ineffectual in any measure the creation and existence of the industrial accident commission of this State or the State compensation insurance fund, the creation and existence of which, with all the functions vested in them, are hereby ratified and confirmed."

On its face, article XIV, section 4 obviously does not envision legislation concerning the disciplining of attorneys to be an integral part of a "complete system of workers' compensation." Nowhere is the Legislature directed to make "full provision" for the disciplining of attorneys. (See *ante*, fn. 10.) Nor does section 4 expressly vest the Legislature with the authority to confer the power to discipline attorneys upon the administrative body therein envisioned.[11]

It is well established that the adoption of article XIV, section 4 "effected a repeal *pro tanto*" of any state constitutional provisions which conflicted with that amendment. (*Subsequent Etc. Fund* v. *Ind. Acc. Com.* (1952) 39 Cal.2d 83, 88 [244 P.2d 889]; *Western Indemnity Co.* v. *Pillsbury* (1915) 170 Cal. 686, 695 [151 P. 398].) ■ A *pro tanto* repeal of conflicting state constitutional provisions removes "insofar as necessary" any restrictions which would prohibit the realization of the objectives of the new article. (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 691-692 [97 Cal.Rptr. 1, 488 P.2d 161]; cf. *City and County of San Francisco* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 115-117 [148 Cal.Rptr. 626, 583 P.2d 151].) ■ Thus, the question becomes whether the Board must have the power to discipline attorneys if the objectives of article XIV, section 4 are to be effectuated. In other words, does the achievement of those objectives compel the modification of a power—the disciplining of attorneys—that otherwise rests exclusively with this court?

The objectives of article XIV, section 4 are clear. The enactment of a complete package of workers' compensation legislation was envisioned. Further, the Legislature was to provide for the resolution of any disputes arising under such legislation by an administrative agency, if it so desired. Finally, this agency was to exercise all "requisite" governmen-

---

[11]The last paragraph of section 4 (see *ante*, fn. 10) does ratify and confirm the "creation and existence" of the Board (formerly the Industrial Accident Commission) and "all the functions" vested in it. This paragraph was added when the former article, article XX, section 21, was amended in 1918. In *Mathews* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 734-735 [100 Cal.Rptr. 301, 493 P.2d 1165], this court interpreted this paragraph to bar only the invalidation of "basic features" of the workers compensation laws "as they have existed since 1911." Such interpretation is in accord with the intent of the amendment as expressed in the two official arguments presented in support of its adoption. (See *id.*, at p. 733, fn. 11.)

The Board does not argue that the provision ratifies the constitutionality of its disciplinary power over attorneys. The reason is clear: the then existing workers' compensation statutes did not purport to vest the Board with disciplinary power over any persons appearing in a representative capacity before it, much less over attorneys. (See *ante*, fn. 3.)

tal functions, to the end that the just resolution of disputes arising under such legislation might be obtained "expeditiously, inexpensively, and without incumbrance . . . ." The only argument advanced by the Board in support of section 4907 is that the power to discipline attorneys is necessary for the expeditious resolution of workers' compensation claims.[12]

It is difficult to discern how the power to suspend or remove attorneys from practice before the Board is necessary to effect the resolution of workers' compensation claims "expeditiously, and without encumbrance." Indeed, the Board itself has described the purpose of its disciplinary powers quite differently. "[B]y providing that 'the privilege of any person, including attorneys[,] . . . to appear . . . as a representative of any party . . . may [, after a hearing,] be removed, denied, or suspended . . .' *the legislature intended to enable the Board to maintain high ethical standards among the practitioners of workers' compensation law.*" (Italics added.) (*In re Sweet* (1978) 43 Cal.Comp. Cases 1039, 1044.)

The lack of any need on the part of the Board for the power to suspend or remove attorneys is convincingly demonstrated by the fact that this court is the only court in this state that can exercise such power. (Bus. & Prof. Code, §§ 6075, 6087, 6100, 6107.) Obviously, the power to suspend or disbar attorneys is not vital to the effective and efficient daily exercise of the courts' jurisdiction. Indeed, it was in. part because

---

[12]The importance of obtaining a speedy and inexpensive resolution of compensation claims cannot be denied. Prior to the enactment of the workers' compensation law, an employee had to pursue in court the limited remedies available to him for injuries suffered on the job. While the injured employee's need for sufficient compensation was immediate, court proceedings were not speedy. Further, even when the injured worker prevailed, a large portion of the monies recovered went to pay court costs and attorneys fees. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1981) § 1.03[3] [hereafter 2 Hanna].) Popular recognition of these deficiencies, as well as the barriers to recovery inherent in common law tort doctrines (see *id.*, at § 1.01[2]; *Mathews* v. *Workmen's Comp. Appeals Bd., supra*, 6 Cal.3d 719, 728-729), resulted in a call for legislative reform. (2 Hanna, § 1.03[3]; *Western Indemnity Co.* v. *Pillsbury, supra*, 170 Cal. at p. 693; *Union Iron Wks.* v. *Industrial Acc. Com.* (1922) 190 Cal. 33 [210 P. 410].) The call for reform led in time to the widespread adoption of workers' compensation laws which incorporated the principle of liability without regard to fault for injuries arising out of and in the course of employment and provided for an administrative resolution of disputes arising under these laws. (2 Hanna, § 1.04[1]-[2].)

The concept of liability without fault was new and the first workers' compensation acts were uniformly declared unconstitutional. As a result, several states, including California, amended their constitutions to authorize the enactment of such legislation. (*Id.*, at § 1.04[2][d].)

the supervision of attorneys is time-consuming and burdensome that the State Bar Act was passed and jurisdiction over the disciplining of attorneys was consolidated in this court.

Nor can the disciplinary power be said to be vital to the effective and efficient daily exercise of an administrative agency's jurisdiction. To this court's knowledge, no administrative agency in this state, other than the Board, purports to have such authority. (See generally Gov. Code, §§ 11500-11529 [on administrative adjudication].) Even the Public Utilities Commission, an "agency of constitutional origin with far-reaching duties, functions and powers" (*Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 905 [160 Cal.Rptr. 124, 603 P.2d 41]), does not purport to have the power to discipline attorneys. (See Cal. Const., art. XII, §§ 1-6; Pub. Util. Code, §§ 701-707, 1701-1795; Cal. Admin. Code, tit. 20, rule 1 et seq.)

Clearly, the Board must have sufficient disciplinary power to enable it to exercise firm control over the conduct of its proceedings and over the conduct of attorneys and others who appear before it. However, this power is provided elsewhere.

Labor Code section 134 empowers the Board to punish for contempt "in like manner and to the same extent as courts of record." (See generally *Rowen* v. *Workers' Comp. Appeals Bd.* (1981) 119 Cal.App.3d 633 [174 Cal.Rptr. 185]; *Marcus* v. *Workmen's Comp. Appeals Bd.* (1973) 35 Cal.App.3d 598, 604 [111 Cal.Rptr. 101]; *Loustalot* v. *Superior Court* (1947) 30 Cal.2d 905 [186 P.2d 673].) Labor Code section 132 authorizes the Board, in the alternative, to resort to the courts in contempt matters. Even a brief review of the acts punishable as contempts establishes that this power is fully sufficient to enable the Board to maintain firm control over its proceedings, so that disputes arising under the workers' compensation laws may be resolved "expeditiously and without encumbrance."[13]

---

[13]Section 1209 of the Code of Civil Procedure provides in pertinent part: "The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"1. Disorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding;

"2. A breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the due course of a trial or other judicial proceeding;

"3. Misbehavior in office, or other willful neglect or violation of duty by an attorney . . . or other person . . .;

"4. Abuse of the process or proceedings of the court, or falsely pretending to act un-

There is a mechanism already in place which provides for the filing and processing of charges against attorneys for conduct deemed to warrant reproval, suspension or disbarment. (See Bus. & Prof. Code, §§ 6075-6087.) This procedure is available to the Board. (See, e.g., *Coviello* v. *State Bar* (1953) 41 Cal.2d 273 [259 P.2d 7].) Article XIV, section 4 provides no authority to transfer to the Board the judicial power to discipline attorneys.

## III.

The Board initiated contempt proceedings against petitioner under the authority of Labor Code section 134. Section 134 provides in part: "[t]he appeals board or any member thereof may issue writs or summons, warrants of attachment, warrants of commitment and all necessary process in proceedings for contempt, in like manner and to the same extent as courts of record." Labor Code section 132 provides confirmation that the Board is empowered to punish for contempt. Section 132 provides for judicial enforcement of the Board's subpoenas on request, subject to the proviso that this "remedy ... is cumulative, and shall not impair or interfere with the power of the appeals board or a member thereof ... to punish for contempt ...." (See also Lab. Code, § 133.)[14]

Petitioner presents three challenges to the contempt action: (1) the Board's procedures so delayed the proceedings that he was denied his speedy trial rights; (2) the Board incorrectly instituted contempt proceedings before holding the required hearing on the merits of the petition for disqualification; and (3) the Board has failed to plead that petitioner knowingly or recklessly made false statements in the petition for disqualification.

---

der authority of an order or process of the court;
"5. Disobedience of any lawful judgment, order, or process of the court;
"6. Rescuing any person or property in the custody of an officer by virtue of an order or process of such court;
"7. Unlawfully detaining a witness, or party to an action while going to, remaining at, or returning from the court where the action is on the calendar for trial;
"8. Any other unlawful interference with the process or proceedings of a court;
"9. Disobedience of a subpoena duly served, or refusing to be sworn or answer as a witness ...."
[14]Neither party to this appeal contests the constitutionality of the Board's exercise of the contempt power.

■ Even if the right to a speedy trial (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15) applies to contempt proceedings, as petitioner asserts,[15] the record establishes that petitioner agreed to each and every one of the continuances the Board requested. Petitioner's agreement to the continuances was a calculated, tactical decision. Accordingly, petitioner waived any speedy trial rights he might have had. (See *People* v. *Wilson* (1963) 60 Cal.2d 139, 146 [32 Cal.Rptr. 44, 383 P.2d 452]; cf. *Rowen* v. *Workers' Comp. Appeals Bd., supra,* 119 Cal.App.3d at pp. 639-640.)

Next, petitioner contends that the Board may not institute a contempt proceeding based upon a petition to disqualify a workers' compensation judge until it has held the required hearing on the merits of the disqualification petition. (See Lab. Code, § 5311.) This contention is without merit. The Board's power to proceed with a contempt action in such circumstances is not contingent upon the prior completion of a hearing on the merits of the disqualification petition. (See Lab. Code, §§ 132-134, 5311.)

Moreover, contrary to his assertion, petitioner has not been prejudiced by the Board's actions. Had a hearing on the petition to disqualify been held, petitioner would have borne the burden of proof. In the contempt proceeding, it is the Board that bears the burden of proof, beyond a reasonable doubt, that petitioner is guilty of contemptuous conduct. (*Ross* v. *Superior Court, supra,* 19 Cal.3d at p. 913.)

Finally, there would be little point in requiring the Board to hold a hearing on the merits of a petition for disqualification where the challenged workers' compensation judge voluntarily recuses himself.

■ Petitioner's final contention is that the Board has alleged no conduct on his part which constitutionally may be made the basis for contempt.[16] The Board has not alleged that the statements in his peti-

---

[15]Petitioner provides, and this court has discovered, no authority which directly supports this proposition. Because contempt proceedings are quasi-criminal in nature, however, a number of the constitutional protections provided criminal defendants have been held to apply in contempt proceedings. (E.g., *Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 913 [141 Cal.Rptr. 133, 569 P.2d 727] [accused in contempt proceeding must be proved guilty beyond a reasonable doubt]; see generally *In re Martin* (1977) 71 Cal.App.3d 472, 480 [139 Cal.Rptr. 451].)

[16]The amended order to show cause reads, in relevant part, as follows: "IT FURTHER APPEARING ... [t]hat the record of proceedings ... manifests the following misconduct on the part of respondent: [¶] That respondent filed the 'Petition for

tion to disqualify Judge Robins were made maliciously, with knowledge of their falsity, or with reckless disregard for their truth or falsity (see *Ramirez* v. *State Bar* (1980) 28 Cal.3d 402, 411 [169 Cal.Rptr. 206, 619 P.2d 399].). Consequently, he argues that the Board should be barred from proceeding further. In essence, petitioner is asking this court to infer from the pleadings that the Board has decided that contempt may be based upon statements protected by the First Amendment.

This does not, however, appear to be the case. The amended order to show cause charges that petitioner filed the disqualification petition "in bad faith and for the purpose of interfering with the proceedings" in the compensation case. (See *ante*, fn. 16.) As evidence of petitioner's bad faith and intentional interference with the progress of the compensation case, the order to show cause alleges that (1) petitioner was late in filing the petition for disqualification; (2) the petition contains statements which are untrue; and (3) petitioner failed to appear, or provide for an appearance by another.

Intentional interference with the proceedings of a court is a proper basis for holding an attorney in contempt. (Code Civ. Proc., § 1209, subds. 1, 8.) ▮ Further, an attorney may be held in contempt for failing to appear, without proper excuse, at a duly scheduled hearing. (E.g., *Rosenstock* v. *Municipal Court* (1976) 61 Cal.App.3d 1, 6-7 [132 Cal.Rptr. 59].) Finally, an attorney may, under certain circumstances, be held in contempt for knowingly making false statements in an affidavit filed in an effort to disqualify a judge for bias and prejudice in order to delay a proceeding. (*In re Ciraolo* (1969) 70 Cal.2d 389, 394 [74 Cal.Rptr. 865, 450 P.2d 241].)

Disqualification of Judge' in the related case in bad faith and for the purpose of interfering with the proceedings in the related case before the Workers Compensation Appeals Board, [¶] That the respondent's bad faith and intentional delay of the orderly proceedings in the related case are evidenced by the dilatory manner in which the 'Petition for Disqualification of Judge' was presented, and particularly by the delay in filing said petition until after the disposition adjourning the conference to March 26, 1979, [¶] That the Petition to Disqualify Workers' Compensation Judge Robins contains statements which are untrue. [¶] That as further evidence of respondent's bad faith and interference with proceedings in the related case, he failed either to appear, or to provide for appearance by another attorney in the Edward Hustedt law offices on the morning of the further conference hearing while providing for service of the Petition for Disqualification of the workers' compensation judge by the same associate who appeared for defendant at the initial conference hearing, [¶] WHEREFORE, [¶] That respondent's actions as described in the preceding four paragraphs constitute contempt of the Workers' Compensation Appeals Board in violation of the Code of Civil Procedure § 1209...."

██ Thus, this court cannot conclude, at this point in the contempt proceedings, that the Board intends to proceed against petitioner on other than proper grounds. Moreover, should the Board act improperly, there is a remedy available to petitioner. "Although an order made in a contempt proceeding is not appealable [citations], it may be reviewed by certiorari or, where appropriate, by habeas corpus [citation]." (*In re Buckley* (1973) 10 Cal.3d 237, 259 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248].)

IV.

Let a peremptory writ of prohibition issue restraining the Board from proceeding further in the pending disciplinary action against petitioner. The Board is directed to dismiss Workers' Compensation Appeals Board proceeding Misc. No. 115. In all other respects, the alternative writ is dismissed.

Tobriner, J., Mosk, J., Richardson, J., Broussard, J., and White, J.,* concurred.

NEWMAN, J., Concurring and Dissenting.—Study of the appeals board brief filed here on February 2, 1981, and of the following excerpts from the majority opinion filed during December 1980 by Justice Compton of the Court of Appeal (Fleming, J. concurring) has persuaded me that I should dissent from part II of the Chief Justice's opinion:

"Petitioner's principal contention is that Labor Code section 4907 is unconstitutional insofar as it purports to grant the Board power to discipline licensed attorneys by way of contempt or otherwise. In this position he is joined by the State Bar of California, which has filed an amicus curiae brief. [¶] Labor Code section 4907 has its basis in California Constitution, article XIV, section 4, which grants to the Legislature *plenary power, unlimited by any other provision of the Constitution,* to create and enforce a system of workers' compensation including the power to establish a mechanism for the administration of the system and for the expeditious and inexpensive resolution of disputes arising thereunder. [Fn. omitted.] [¶] The claim of unconstitutionality, although stated in various ways, i.e., that the statute exceeds the Legislature's authority, contravenes the doctrine of separation of powers and does not harmonize with public policy, is simply that the authority

---

*Assigned by the Chairperson of the Judicial Council.

to license and discipline attorneys is, and should remain, exclusively the province of the Supreme Court acting through its administrative arm, the State Bar of California. ... [¶] The State Bar has favored us with a thorough and unassailable analysis of the history and parameters of the Supreme Court's authority in the field of regulating the profession and its practitioners. The Supreme Court's preeminence cannot be questioned. It is important to observe, however, that the Supreme Court, in imposing discipline does not order suspension or disbarment from a particular case, field of practice, or particular court; rather it orders suspension or disbarment from *all practice of law. (Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65].) Thus the power exercised by the Supreme Court is infinitely more pervasive than that purported to be exercised by the Board. [¶] The issue presented by the instant petition is whether Labor Code section 4907, in granting to the Board the power to suspend or revoke the privilege of any person to appear before it in a representative capacity, as applied to attorneys, constitutes a regulation of the 'practice of Law,' which unconstitutionally impinges on the authority of the Supreme Court and invades the field preempted by the State Bar act. (Bus. & Prof. Code, § 6000 et seq.) [¶] The people in adopting the article XIV, section 4, have spoken in the most clear and comprehensive terms in describing the Legislature's authority. Similarly, the Legislature has left no doubt of its intention in enacting Labor Code section 4907. The language of that statute is clear and unambiguous. [¶] The Legislature's interpretation of the constitutional provision under which it purports to act is entitled to great weight for the reason that the California Constitution, unlike the United States Constitution, does not grant power to the Legislature but instead serves as a limitation on the inherent or residual power of the Legislature. (*California Housing Finance Agency* v. *Patitucci* (1978) 22 Cal.3d 171 [148 Cal.Rptr. 875, 583 P.2d 729].) [¶] 'The purpose of the doctrine [of separation of powers] is to prevent one branch of the government from exercising the *complete* power constitutionally vested in another; it is not intended to prohibit one branch from taking action properly within its sphere that has the *incidental* effect of duplicating a function or procedure delegated to another branch.' (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, at p. 117 [145 Cal.Rptr. 674, 577 P.2d 1014].) [¶] A statute should be upheld unless its unconstitutionality appears clearly and unmistakably. (*Fox* v. *Federated Department Stores, Inc.* (1979) 94 Cal.App.3d 867 [156 Cal.Rptr. 893]; *L. B. Foster Co.* v. *County of Los Angeles* (1968) 265 Cal.App.2d 24 [71 Cal.Rptr. 16].) Any doubt as to the Legislature's authority to act in a given area must be resolved in favor of the legislative action and the en-

actment must not be construed to embrace matters not covered by the language of such enactment. (*City and County of San Francisco* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103 [148 Cal.Rptr. 626, 583 P.2d 151].) Legislative enactments must be construed in a manner that seeks to harmonize the statute and the Constitution. (*Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497 [134 Cal.Rptr. 668, 556 P.2d 1119].) [¶] The Legislature has provided that any party appearing before the Board may be represented by a person who is not an attorney. (Lab. Code, § 5700.) This is consistent with the constitutional mandate to provide an expeditious and *inexpensive* method of fairly resolving disputes. (Cal. Const., art. XIV, § 4.) [¶] That provision was upheld in *Eagle Indem. Co.* v. *Industrial Acc. Com.* (1933) 217 Cal. 244 [18 P.2d 341], where the Supreme Court in upholding the validity of then section 19a of the Workers' Compensation Act (now Lab. Code, § 5700) also sanctions the power of the Industrial Accident Commission (now the Board) to award attorney's fees to nonlawyer representatives. [¶] If the adjudicatory machinery of the Board is to operate effectively and expeditiously, it is essential that the Board have available to it reasonable means of regulating the conduct of persons who appear before it. [¶] The power of contempt is necessary for a tribunal to conduct orderly proceedings. (*Smith* v. *Superior Court, supra*, 68 Cal.2d 547.[)] By virtue of Labor Code sections 133 and 134, that power has been given to the Board. The petitioner does not seriously contend that the granting of contempt powers to the Board impinges on the power of the Supreme Court to discipline attorneys, so long as the sanction imposed does not take the form of suspending the privilege to appear before the Board. [¶] Labor Code section 4907 is modest in its scope. The power of the Board extends only to regulating those persons who may *appear* before it. It does not purport to reach beyond the confines of advocacy before the Board. It cannot be construed as empowering the Board to regulate any other activity or function that might be described as the 'practice of law.' [¶] This limitation is illuminated when we examine the converse of the Board's authority. While the Legislature has authorized lay persons to appear before the Board in a representative capacity, it has not and could not authorize a lay person to represent another in processing and appearing on a petition for a writ of review to this court, where only duly licensed attorneys may practice. By the same token the Board could not exercise any authority over attorneys who undertake such representation. [¶] The California Supreme Court in *Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036], considered a challenge to the validity of an ordinance of the City of Los Angeles regulating the activities of lobbyists

by a licensed attorney, who represented clients before the city council and various city commissions and boards. In establishing a test for whether legislative regulation of the activities of attorneys encroaches on the field preempted by the State Bar act, the court held at pages 543-544: '[T]he State Bar act preempts the field of regulation of attorneys only insofar as they are "practicing law" under the act—i.e., performing services in a representative capacity in a manner *which would constitute the unauthorized practice of law if performed by a layman*.... The act in its entirety constitutes an exclusive state regulatory scheme only insofar as *it governs the activities which only licensed attorneys can lawfully perform.*' (Italics added.) [¶] We are not [un]-mindful of the fact that a number of attorneys devote substantially all of their professional efforts to the field of workers' compensation and that this area of the law is a recognized specialty. The fact remains, however, that the advocacy portion of that type of practice is open to laymen and lawyers alike. Since advocacy before the Board and its subordinate tribunals is not an activity restricted to licensed attorneys, under the test of *Baron* v. *City of Los Angeles, supra*, regulation of such advocacy is not preempted by the State Bar act or the inherent power of the Supreme Court to regulate the practice of law. [¶] An attorney who opts to appear as an advocate in workers' compensation proceedings is subject to the same rules and regulations as any other person performing in the same role. If the problem is one which the profession feels is intolerable, the solution is legislative action by way of repeal of either Labor Code sections 4907 or 5700. We are of the opinion that the existing scheme does not offend the Constitution or the doctrine of separation of powers. It is well within the Legislature's prerogative."